## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON

**DAVID DEAN BUZZARD, JR.,**

      **Plaintiff,**

**v.**                                       **Case No. 2:15-cv-06376**

**DAVID BALLARD, et al.,**

      **Defendants.**

### PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Thomas E. Johnston, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court is the defendants' Motion to Dismiss (ECF No. 39).

### RELEVANT PROCEDURAL HISTORY

This Proposed Findings and Recommendation only addresses the Motion to Dismiss filed by defendants Ballard, Gregory, Dillon, Boggs, Propst, Lucas, Angel, Hart and Terry concerning the claims alleged against them in their individual capacities, as alleged in the Second Amended Complaint (ECF No. 25).[1] The lengthy Second Amended

---

[1] Defendant Vladimir Iotov has filed an Answer to the Second Amended Complaint (ECF No. 41), and appears to be prepared to further litigate the allegations against him, including the Eighth Amendment claim contained in Count Nine of the Second Amended Complaint alleging that Iotov used excessive force against Buzzard on July 14, 2015. Additionally on June 22, 2016, the presiding District Judge entered a Memorandum Opinion and Order (ECF No. 42) dismissing as moot the Buzzard's claims for declaratory and injunctive relief and dismissing Jim Rubenstein as a defendant. (*Id.*)

Complaint alleges that, beginning in late August of 2014, while the plaintiff, David Dean Buzzard ("Buzzard"), was incarcerated at the Mount Olive Correctional Complex ("MOCC"), the defendants, acting in retaliation for his filing of a separate civil action (Case No. 3:14-cv-25533),[2] conspired to violate Buzzard's rights under the First, Fourth, Eighth and Fourteenth Amendments and the Privileges and Immunities Clause, Article 4, § 2 of the United States Constitution.  Specifically, Buzzard contends that the defendants denied him access to the courts and communication with witnesses and defense counsel in the WRJ civil matter by denying him postage and refusing to send legal mail, as well as seizing video evidence that had been produced to him in discovery.

On June 15, 2016, the defendants filed a Motion to Dismiss (ECF No. 39) and a Memorandum of Law in support thereof (ECF No. 40).  The defendants' motion documents assert various grounds for dismissal of all of the counts of the Second Amended Complaint, with the exception of Count Nine against defendant Iotov.  On July 22, 2016, Buzzard filed a Response in Opposition to Defendants' Motion to Dismiss (ECF No. 44) and a Memorandum in support thereof (ECF No. 45), which have been deemed to be timely filed by the court.  (ECF No. 52).  The defendants did not file a reply brief. Accordingly, the defendants' motion is ripe for adjudication.

## **STANDARD OF REVIEW**

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints.  However, in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a

---

[2] Case No. 3:14-cv-25533, which is pending in this court's Huntington Division, was filed against staff at the Western Regional Jail ("WRJ") (hereinafter "the WRJ civil matter"), alleged that certain correctional officers at the WRJ used excessive force against Buzzard on September 5, 2013.  That Complaint also alleged claims of bystander liability and supervisory liability concerning the excessive force incident and other conditions of confinement at the WRJ.

case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a civil rights case.  The Court wrote:

> Two working principles underlie our decision in *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted).  Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.*, at 556.
>
> * * *
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

556 U.S. at 678-79.  The defendants' Motion to Dismiss asserts that Buzzard's Second Amended Complaint fails to state any claims upon which relief can be granted and will be reviewed under these standards.

## ANALYSIS

**A.      Buzzard's denial of access and retaliation claims.**

In Counts One, Two and Six of the Second Amended Complaint, Buzzard alleges that MOCC Trustee Clerks Jane Lucas, Laura Angel and Abie Hart, as well as MOCC Post Office employee Lisa Boggs, denied him access to the courts in violation of his rights under the First and Fourteenth Amendments and the Privileges and Immunities Clause of Article 4, § 2 of United States Constitution, by refusing to authorize postage and mailing of his legal mail, above and beyond that provided in the indigent allowance, because they did not consider mailings regarding a civil lawsuit unrelated to MOCC or the WVDOC to be valid "legal mail." (ECF No. 25 at 26, 28, ¶¶ 93, 94 and 98). Additionally, in Count Five of the Second Amended Complaint, Buzzard alleges that Kathy Dillon, the Administrative Assistant/Paralegal at MOCC, also denied him access to the courts because she deprived him of adequate access to video evidence from his WRJ civil matter that was produced to him in discovery. (*Id.* at 27-28, ¶ 97).

Specifically, Buzzard alleges that, in late August, 2014, he began submitting indigent requests to MOCC trustee clerk Jane Lucas, in order to obtain materials and postage for filing his Complaint in the WRJ civil matter. (ECF No. 25 at 9, ¶ 23 and Ex. 2). On September 7, 2014, Buzzard attempted to mail some documents to the United States District Court in Huntington ("the Huntington Court") which had previously been returned to him by MOCC staff, who claimed that he had insufficient funds in his inmate account to pay for postage to mail them. (*Id.* at 9-10, ¶ 24). Fearing that his litigation efforts were being thwarted because he was an inmate filing a civil lawsuit, Buzzard also attached a unit team request clearly indicating that the legal documents did not concern MOCC or the WVDOC. (*Id.*)

4

On September 8, 2014, Jane Lucas responded to Buzzard's unit team request stating that Buzzard must use his indigent allowance of $4.90 to mail legal mail and, if he went over that amount, he would incur legal mail debt that must be paid as soon as funds were available in his account.  Lucas further inquired, "If the documents do not have anything to do with DOC or Mount Olive, then how is it legal?"  (*Id.* at 10, ¶ 26 and Ex. 3).  Buzzard further alleges that, although "MOCC staff" repeatedly refused to mail his legal documents because he could not afford postage, they allowed him to acquire "essentially unlimited debt" for legal copies in the law library.  (*Id.* at 10-11, ¶¶ 27-29 and Ex. 4).[3]

Buzzard further alleges that, on or about November 1, 2014, he submitted 6 to 8 sealed manila envelopes that were clearly marked as "legal mail," along with vouchers for postage, to the MOCC post office for mailing.  (*Id.* at 11-12, ¶ 30).  Buzzard states that these envelopes were addressed to the Huntington Court and defense counsel in the WRJ civil matter.  (*Id.* and Ex. 5).  However, Buzzard further contends that, on November 19, 2014, Mr. Sergant, a counselor on his unit, advised him that his 6-8 packages submitted on November 1, 2014 had not been mailed and had been held in the post office - without Buzzard's knowledge or consent - allegedly because the trustee clerk staff would not allow the postage for those packages to be billed to Buzzard's account.  (*Id.* at 12, ¶¶ 31, 32).

Buzzard further alleges that, when Sergant contacted the trustee clerk staff on his behalf, he was told by Laura Angel that, "since the packages were related to a civil action voluntarily filed by the Plaintiff, that MOCC would not allow for postage to be billed to

---

[3]  Buzzard's Second Amended Complaint does not specifically indicate what documents he was attempting to mail to the Huntington Court or whether he was ultimately denied the ability to mail those documents. The docket sheet of the WRJ civil matter indicates that Buzzard's Complaint in that matter was docketed on September 8, 2014 (Case No. 2:14-cv-25533, ECF No. 4), along with his Applications to Proceed Without Prepayment of Fees and Costs (*id.*, ECF Nos. 1 and 2) and a Motion for Appointment of Counsel (*id.*, ECF No. 5).  Then, on September 10, 2014, Buzzard filed a Motion to Amend Complaint (*id.*, ECF No. 7).  Thus, Buzzard successfully mailed those documents to the Huntington Court in this timeframe.

the Plaintiff's account because MOCC does not recognize civil action lawsuits as valid legal mail." (*Id.*, ¶ 33). Buzzard voiced his disagreement and told Sergant, who was still on the phone with Angel, that "her reasoning was a violation of [his] constitutional right to access the Courts and a violation of [his] first and fourteenth amendment right under the constitution of the United States." (*Id.* at 12-13, ¶ 34) (Alteration added).

Angel allegedly replied that Buzzard did not have money on his account to cover the cost of the postage for those packages. (*Id.* at 13, ¶ 35). Buzzard reiterated his opinion that Angel's actions violated his constitutional rights and Sergant attempted to convince Angel that, because Buzzard worked in the law library, the postage costs could be deducted from his payroll on the 15th of each month. (*Id.*) Buzzard then asked Sergant to date stamp the packages so that he could demonstrate to the Huntington Court that he had attempted to mail them and it was not his fault if he missed a court deadline. (*Id.*, ¶ 36 and Ex. 5).

Buzzard also appeared in the Huntington Court that same day and addressed the issue of MOCC staff refusing to mail his legal mail with United States Magistrate Judge Cheryl A. Eifert, who stated that she would write a letter to Warden David Ballard about his concerns. (*Id.* at 13-14, ¶¶ 37-39). Buzzard also filed an administrative grievance concerning MOCC staff refusing to mail his legal mail and requesting "unimpeded access to the courts." (*Id.* at 14, ¶ 40 and Ex. 6). The unit level response to his grievance, which contains an illegible signature, states, "Per the paralegal, your rights to access to the courts have not been impeded." (*Id.*, Ex. 6).

On December 4, 2014, Warden David Ballard affirmed the unit level decision, but stated, "Your mail was mailed out per policy and procedure.   If there was a misunderstanding, we apologize." (*Id.*, ¶ 41 and Ex. 6).   On December 5, 2014, the

grievance was affirmed at the Commissioner's level, and was, thus, exhausted. (*Id.* at 14-15, ¶ 42).

Buzzard further specifically alleges that, on December 19, 2014, he received a package from defense counsel in the WRJ civil matter, which contained discovery materials, including three compact discs of "crucial" video evidence. (*Id.* at 15, ¶ 43). The MOCC post office staff seized the videos and Buzzard was issued a property seizure report. (*Id.* and Ex. 7). Buzzard was further informed that Kathy Dillon was going to view the evidence and determined whether he should be allowed to view it. (*Id.*)

After Dillon reviewed the videos outside of his presence, she only allowed Buzzard to view those videos only once before requiring him to mail them to someone outside the prison. (*Id.* at 15-16 and 27-28, ¶¶ 46, 97). However, Buzzard further alleges that, although he was not allowed to retain the videos, he learned that, as of the first week of January, 2015, his family, to whom the videos were to be sent, still had not received them. He was further advised that the postal staff would not mail them because Buzzard did not have sufficient funds in his account. (*Id.* at 16, ¶¶ 47-48). Buzzard filed another grievance and, ultimately, after his unit staff intervened, Kathy Dillon and Assistant Warden Teresa Gregory arranged for the videos to be mailed. (*Id.* at 15-17, ¶¶ 44-53).

Nevertheless, Buzzard contends that his problems with his legal mail continued. Buzzard further alleges that, in late March, 2015, he twice attempted to mail a letter to the medical provider at the WRJ in order to obtain medical records and x-rays for use in the WRJ civil matter. (*Id.* at 17-18, ¶¶ 54-55 and Exs. 11 and 12). Despite the alleged assurances of staff, including Warden David Ballard, that "this would not happen again," on April 1, 2015, Buzzard learned that the MOCC post office would not mail the letter to

the medical provider, as well as two other letters related to his WRJ civil matter,[4] because the trustee clerk stated that he did not have any money on his account and she would not approve a voucher.  (*Id.* at 18, ¶ 56 and Ex. 12).  Buzzard also requested an indigent pack, stating that he needed to write to his family, and was advised by trustee clerk Abie Hart that he was not eligible for one at that time because he had supposedly been reimbursed for cable fees that were improperly deducted from his account.  (*Id.* at 18-19, ¶¶ 57-59 and Exs. 13-14).[5]  Buzzard continued to file grievances concerning these impediments to his legal mailings and the alleged "retaliation" he was experiencing for filing the WRJ civil matter.  (*Id.* at 19, ¶¶ 60-61 and Exs. 15-16).

The right of access to the courts includes providing prisoners with the means to "attack their sentences, directly or collaterally, and . . . to challenge the conditions of their confinement."  *Lewis v. Casey*, 518 U.S. 343, 355 (1996).  Such claims are generally addressed under the First Amendment, but may also implicate the due process clause of the Fourteenth Amendment and the Privileges and Immunities Clause contained in Article IV, § 2 of the United States Constitution.  *See Wolf v. McDonnell*, 418 U.S. 539, 579 (1974) ("The right of access to the courts . . . is founded in the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights"); *Simmons v. Dickhaut*, 804 F.2d 182, 183 (1st Cir. 1986) (citing *Chambers v. Balt. & Ohio R.R.*, 207 U.S. 142, 148 (1907)) (construing denial of access to courts claim under Privileges and Immunities Clause).

---

[4]  On April 1, 2015, Buzzard submitted two other letters related to his WRJ civil matter for mailing – one to counsel for the defendants therein and one to a potential witness.  (*Id.*, ¶ 58).

[5]  Buzzard's allegations about the cable fees will be further addressed *infra*.

In *Lewis*, the Supreme Court reviewed its decision in *Bounds v. Smith*, 430 U.S. 817 (1977), and reiterated that "[i]nsofar as the right vindicated by *Bounds* is concerned, 'meaningful access to the courts is the touchstone,' and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." 518 U.S. at 350. Thus, in order to prevail on a First Amendment claim grounded in the denial of access to the courts, "a prisoner must demonstrate that he suffered an actual injury, such as missing a court-imposed deadline or being unable to file a complaint because of the Defendants' actions." *Pronin v. Johnson*, 628 F. App'x 160, 161 (4th Cir., Oct. 7, 2015) (citing *Lewis*, 518 U.S. at 351-52).

The defendants' motion documents assert that Buzzard's denial of access to the court claims fail because he cannot plausibly establish any "actual injury" due to the conduct of the defendants. Their Memorandum of Law asserts that, in the WRJ civil matter, Buzzard has been able to file more than 113 documents, discovery has been completed, and the Magistrate Judge assigned to that case recommended that the defendants' summary judgment motion be denied, in part, and that the matter be set down for trial.[6] (ECF No. 40 at 2-3). Thus, the defendants assert:

---

[6]  In fact, a review of the current docket sheet in the WRJ civil matter demonstrates that the District Judge adopted the Magistrate Judge's Proposed Findings and Recommendation, denied summary judgment with respect to Buzzard's Eighth Amendment excessive force claims against the correctional officers involved, and granted summary judgment on Buzzard's bystander and supervisory liability claims. (Case No. 3:14-cv-25533, ECF Nos. 234, 241). Additionally, counsel has noticed an appearance on Buzzard's behalf (*id.*, ECF No. 251) and trial is scheduled to begin on April 18, 2017 (*id.*, ECF No. 254). This court may take judicial notice of these other court records. *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (citation omitted); *see also Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 726, 738 (6th Cir. 1980) ("Federal courts may take judicial notice of proceedings in other courts of record." (quoting *Grander v. Pub. Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969))); *see also Witthohn v. Fed. Ins. Co.*, 164 F. App'x. 395, 396-97 (4th Cir. 2006) (noting that, as an exception to the normal rule that a court cannot consider documents outside of the complaint when ruling on a Rule 12(b)(6) motion, "a court may consider official public records . . . so long as the authenticity of these documents is not disputed").

Overall, Plaintiff has successfully litigated Civil Action No. 3:14-CV-25533 and he has not been denied access to the courts. Moreover, even if it were assumed that he was somehow denied access to the courts with regard to this case, it is clear that he has overcome summary judgment and prepared his case for trial, so he has therefore not suffered any actual harm. Thus, Plaintiff's constitutional claims in this regard must be dismissed as a matter of law.

(*Id.* at 3).

Buzzard's Response summarily asserts that he has alleged sufficient evidence to establish a *prima facie* claim of denial of access to the courts as addressed in *Bounds*. (ECF No. 44 at 1). He further asserts that he has "pleaded sufficient facts with regard to actual injury and/or specific harm." (*Id.*) However, he offers no support for this claim beyond his bald statement that "[o]fficials potentially violate an inmate's right to access the Courts if they open legal mail . . . outside the inmate's presence." (*Id.*) His Memorandum elaborates on this statement, focusing on defendant Kathy Dillon's opening of the discovery package received from defense counsel in the WRJ civil matter.

Buzzard's Response asserts that Dillon's review of his legal mail[7] and her order for him to mail the video evidence out of the facility "actually prejudiced" his ability to prosecute his claim. However, his Response documents wholly fail to address how his ability to prosecute his claims in the WRJ matter has been "actually injured." Buzzard's allegations do not establish that the conduct of any of the defendants actually caused him to miss a court-imposed deadline or proximately caused the dismissal of any of his claims.

Turning to the specific claim of denial of access to the courts raised against Kathy Dillon in Count Five, Buzzard has not established that not having access to the videos after he was able to view them had any specific detrimental effect on ability to litigate his

---

[7] The undersigned will address this specific allegation *infra*.

WRJ civil matter.  It further appears that the video evidence was ultimately mailed to his family and will be available for use at his trial.  Buzzard does not allege that the evidence has been destroyed, tampered with or could not be replicated.[8]  Thus, even taking all of Buzzard's allegations as true, he cannot demonstrate that Dillon's conduct has plausibly denied him access to the court in the WRJ civil matter.

None of Buzzard's allegations rises to the level of a denial of access to the courts as contemplated in *Bounds, Lewis* and their progeny.  Consequently, the undersigned proposes that the presiding District Judge **FIND** that Buzzard's Second Amended Complaint fails to state a plausible claim of denial of access to the courts, under the First or Fourteenth Amendments, or the Privileges and Immunities Clause,  against defendants Jane Lucas (Count One), Laura Angel (Count Two), Kathy Dillon (Count Five), or Lisa Boggs and Abie Hart (Count Six) and, thus, these claims are appropriate for dismissal under Rule 12(b)(6).

However, because Buzzard's Second Amended Complaint and his Response to the defendants' Motion to Dismiss[9] have also asserted that "the defendants" "retaliated" against him for filing the WRJ civil matter, the undersigned believes the Second Amended Complaint can be liberally construed to also be alleging a First Amendment retaliation claim, at least as to certain defendants.

To establish a claim of retaliation under section 1983, an inmate plaintiff must allege facts showing that the alleged retaliatory action either violated a constitutional

---

[8]   Moreover, now that Buzzard is represented by counsel in the WRJ matter, his counsel may properly obtain and possess the videos and use them, as needed, in preparation for his trial.

[9]   The plaintiff's Response documents shift the focus of his First Amendment claim from a true denial of access claim to one grounded in retaliation for filing his WRJ civil matter.

right or "constitute[d] punishment for [his] exercise of a constitutional right." *Cochran v. Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996) (citing *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994)).   However, claims of retaliation by inmates are often viewed with skepticism because "every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Cochran*, 73 F.3d at 1317.

Because retaliation by prison officials has the potential to chill the exercise of the right to seek redress through the courts, prisoners who allege such retaliation may bring a claim under the First Amendment. *Turney v. Safley*, 482 U.S. 78, 84, 86 (1987); *see also Hudspeth v. Figgins*, 584 F.2d 1345 (4th Cir. 1978); *Russell v. Oliver*, 552 F.2d 115 (4th Cir. 1977).   In order to sufficiently state a retaliation claim under the First Amendment, a plaintiff must establish that (1) he engaged in protected First Amendment activity; (2) the defendants took some adverse action that would deter a person of ordinary firmness from engaging in that conduct; and (3) there was a causal connection between the protected activity and the defendants' conduct.   (That is, that the exercise of the plaintiff's protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct).   *Hendrick v. Bishop*, No. 14-cv-2544, 2016 WL 1060212 (D. Md., Mar. 14, 2016) (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005)).

However, not all retaliatory conduct tends to chill First Amendment activity. *DiMeglio v. Haines*, 45 F.3d 790, 806 (4th Cir. 1995).  A plaintiff seeking to recover for retaliation must show more than a "*de minimis* inconvenience" to his exercise of First Amendment rights to establish the adverse action element.   *ACLU of Md., Inc. v. Wicomico County, Md.*, 999 F.2d 780, 786 n.6 (4th Cir. 1993).  Furthermore, a plaintiff must be able to establish that the exercise of his protected right was a substantial or

motivating factor in the defendant's alleged retaliatory conduct.  *See Wagner v. Wheeler*, 13 F.3d 86, 90 (4th Cir. 1993).

As noted recently by another member of this court, "[t]he causation requirement is particularly significant; the Plaintiff must not only show that the protected expression played a role in the retaliation, but also must establish that 'but for' the protected expression, the purportedly retaliatory action would not have occurred." *Djenasevic v. U.S. Dep't of Justice*, No. 5:14-cv-14596, 2016 WL 6657938, *4 (S.D. W. Va., Nov. 9, 2015) (Berger, J.) (citing *Tobey v. Jones*, 706 F.3d 379, 390-91 (4th Cir, 2013); *Huong v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134, 1140 (4th Cir, 1990)).  Retaliation is often difficult to prove by direct evidence, and conclusory allegations of retaliatory motive that are unsupported by material facts are insufficient to state a claim under section 1983.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987).  However, "temporal proximity alone may be 'significant enough to constitute indirect evidence of a causal connection so at to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.2d 408, 422 (6th Cir. 2004)).

The elements of whether the alleged adverse action would deter a person of ordinary firmness from engaging in the protected activity and whether the plaintiff's protected activity was a substantial motivating factor in the defendant's conduct are questions of fact that should generally survive the pleading stage, if they are sufficiently pled.  *See, e.g., Kennedy v. Boneville*, 413 F. App'x 836, 839-40 (6th Cir. 2011); *see also Bell v. Johnson*, 308 F.3d 594 (6th Cir. 2002) ("[I]n most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law"); *Hendrick, supra,* 2016 WL 1060212 at *7

("[D]etermining whether a person of ordinary firmness would be deterred is usually a question best left for a jury."

The Second Amended Complaint is replete with conclusory references to "retaliation" and "obstruction" by "the defendants."[10]  However, the only specific count that mentions "retaliation" is Count Six, which states as follows:

> On or about March 23, 2015, Defendants Lisa Boggs and Abie Hart did willfully and deliberately violate the Plaintiff's First and Fourteenth Amendment rights under the Constitution of the United States, and did willfully and deliberately obstruct, impede and oppress the Plaintiff's right to access the Court, which is protected by the privileges and immunities clause of Article IV, § 2 of the United States Constitution.  These two Defendants did so when they deliberately refused to attach postage to the indigent Plaintiff's legal documents for mailing.  <u>These defendants acted in a retaliatory nature for the Plaintiff's filing of civil action No. 3:14-CV-25533.</u>

(ECF NO. 25 at 28, ¶ 98) (Emphasis added).

However, Buzzard further addresses the substance of his retaliation claims in his Memorandum in Support of his Opposition to the defendants' Motion to Dismiss (ECF No. 45), which states in pertinent part:

> A review of the second amended complaint outlines that after the Plaintiff exercised his first amendment right to petition the United States District Court for the Redress of grievances, (Civil Action No. 3:14-CV-25533) the Defendants did, among other things:
>
> 1.   Deny Plaintiff paper, envelopes and postage to prepare and submit his Civil Rights Complaint to the U.S. District Court in Huntington, WV (see Exhibit TWO of second amended complaint) [This conduct appears to be specifically addressed in Count One against Jane Lucas in Paragraph 93, and also in Paragraphs 23-26, of the Second Amended Complaint];
>
> 2.   Defendant Laura Angel stated that MOCC would not mail Plaintiff's legal documents because they were

---

[10]   Buzzard's claims in Counts One, Two, Five and Six specifically assert that the defendants named therein "did willfully and deliberately obstruct, impede and oppress the plaintiff's right to access the court."

"related to a civil action voluntarily filed by the Plaintiff" and that "MOCC does not recognize civil action lawsuits as valid legal mail." (Paragraphs 31-34 of second amended complaint);

3.      Defendant Kathy Dillon seized crucial video evidence mailed to the Plaintiff, then viewed that evidence outside the Plaintiff's presence and refused to allow the Plaintiff adequate access to that evidence. (Paragraphs 43-46 of Second Amended Complaint);

4.      Defendant Iotov even assaulted the Plaintiff with a chemical agent in response to Plaintiff seeking the assistance of a shift commander in locating his legal documents. (Paragraphs 69-82 of Second Amended Complaint).

Furthermore, the entire second amended complaint clearly demonstrates that Plaintiff (1) Engaged in protected conduct; (2) the Defendants took an adverse action and/or inactions "that would deter a person of ordinary firmness from continuing to engage in that conduct"; and (3) That the adverse actions were taken (at least in part) because of the protected conduct of the Plaintiff. Based on the persistent acts committed by the Defendants it is clear that they did commit these acts solely for the purpose of trying to deter the Plaintiff from pursuing his 42 U.S.C. § 1983 claim against correctional officers at the Western Regional Jail.

(ECF No. 45 at 2).

Taking these allegations as true, Buzzard may be able to sufficiently state a claim of retaliation, at least as to the specific defendants mentioned in paragraph 98 of his Second Amended Complaint, and those identified in the four enumerated paragraphs of his Response Memorandum citing to specific conduct by those defendants that was initially addressed in specific paragraphs of the Second Amended Complaint. Because sufficiently pled allegations of retaliation are usually not appropriate for disposition at the pleading stage, the undersigned proposes that the presiding District Judge **FIND** that Buzzard's allegations sufficiently state a plausible First Amendment retaliation against

defendants Jane Lucas, Laura Angel, Kathy Dillon, Lisa Boggs, Abie Hart and Vladimir Iotov.

However, as further addressed *infra*, the undersigned proposes that the presiding District Judge **FIND** that Buzzard's Second Amended Complaint fails to sufficiently allege plausible allegations of retaliation based upon the conduct of defendants David Ballard, Teresa Gregory, Larry Propst and Ralph Terry, who were acting solely in supervisory roles.

> **B.    The plaintiff's Fourth and Fourteenth Amendment claims against Kathy Dillon.**

In Counts Three and Four, Buzzard alleges that Kathy Dillon also violated his right to be free from illegal search and seizure under the Fourth Amendment and his right to due process of law under the Fourteenth Amendment when she seized his three CDs of video evidence and viewed them outside of his presence. The defendants' Memorandum of Law in support of their Motion to Dismiss addresses these claims as follows:

> Plaintiff's claims against Ms. Dillon are based on allegations that she reviewed certain documents that he had in his possession and that she reviewed the content of the CDs that he received in the mail. Plaintiff argues that these actions amount to illegal searches and seizures as well as violation of his due process rights. In asserting these claims, Plaintiff disregards the fact that he is currently a prison inmate. The United States Supreme Court as well as several other federal courts have repeatedly held that, although inmates retain first amendment rights, these rights are limited to the extent they are inconsistent with an individual's status as a prisoner or with legitimate penological objectives of a corrections system. *Pell v. Procunier*, 417 U.S. 817 (1974); *Procunier v. Martinez*, 416 U.S. 396 (1974); *Turner v. Safley*, 482 U.S. 78 (1987). More specifically, the Supreme Court has stated:
>
> > Society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply

16

> cannot be reconciled with the concept of incarceration and the needs and objectives of the penal institutions.
>
> *Hudson v. Palmer*, 468 U.S. 517, 104 S. Ct. 3194, 82 L. Ed.2d 393 (1984). This must be considered when analyzing the nature of Plaintiff's claims against Ms. Dillon.  He claims that she illegally searched and seized discovery documents and CDs that he had in his possession.  Plaintiff admits that these documents were returned to him.  Further, he has not alleged that these documents were damaged or altered in any way.  He simply alleges that Ms. Dillon reviewed them, and he seemingly believes that, despite being a prison employee, she had no authority to do so.  However, Plaintiff['s] understanding of the law is lacking in this regard.

(ECF No. 40 at 3-4).

Buzzard's Response documents request that these claims should not be dismissed because Dillon's order for him to mail the video evidence out of the prison "den[ied] [him] any way of utilizing the evidence any further."  (ECF No. 45 at 5).[11]  However, he offers no further support of how Dillon's conduct actually violated his rights under the Fourth and Fourteenth Amendments.  Instead, he simply asserts that the case law cited by the defendants in their motion documents is not the proper case law for analysis of these claims because they involve cell searches and searches of mail sent between inmates, not legal mail.  (ECF No. 45 at 5-6).

Greater protection is often given to legal mail than to non-legal mail and to incoming mail than to outgoing mail.  *Thornburgh v. Abbott*, 490 U.S. 401, 403 (1989).  The Supreme Court has held that a prisoner has a right to be present when his legal mail is opened.  *Wolff v. McDonnell*, 418 U.S. 539, 574-76 (1974); *Crowe v. Leeke*, 550 F2d 184 (4th Cir. 1977).  Courts further recognize that such a claim is most appropriately addressed under the First Amendment, and courts have repeatedly held that an isolated incident of

---

[11]  This assertion was previously addressed in the discussion of Buzzard's denial of access to the courts claim.

mail tampering is usually insufficient to establish a constitutional violation.  *See, e.g.,*
*Morgan v. Montanye*, 516 U.S. 1367, 1371 (2d Cir. 1975).   Additionally, as noted
previously *supra*, in order to survive a motion to dismiss, a plaintiff alleging a First
Amendment claim of mail tampering grounded in denial of access to the courts must
allege that the defendant who tampered with his mail actually "hindered his efforts to
pursue a legal claim." *Lewis*, *supra*, 518 U.S. at 351.

To the extent that Buzzard, instead, asserts a claim under the Fourth Amendment
resulting from Dillon's opening of his mail and viewing the videos therein, the premise
set forth in *Hudson, supra*, 468 U.S. at 526 (cited by the defendants herein), finding that
there is no Fourth Amendment protection for searches and seizures of property in inmate
cells, has been extended to the search and seizure of legal materials and legal mail.  *See,
e.g., Thomas v. Kramer*, 2009 WL 937272 at *2 (E.D. Cal., Apr. 7, 2009) ("no Fourth
Amendment violation when inmate not present during search of legal materials"); *Hall v.
Chester*, 2008 WL 4657279 at *6 (D. Kan., Oct. 20, 2008) ("[p]rison officials do not
violate an inmate's Fourth Amendment rights by inspecting the inmate's legal mail and
are not required to have probable cause to search incoming mail.")  Therefore, the
undersigned proposes that the presiding District Judge **FIND** that Buzzard's Complaint
fails to state a plausible Fourth Amendment claim against defendant Kathy Dillon.

Furthermore, Buzzard's assertion that Dillon's conduct in opening his legal mail
outside of his presence and ordering him to send the videos outside of the prison after
viewing them similarly fails to state a plausible claim under the Fourteenth Amendment
due process clause.  His assertion that Dillon "willfully, deliberately and maliciously
denied the Plaintiff adequate access to the video evidence . . . which she knew he [was]

litigating in a pro se capacity[,]" simply appears to be an extension of his denial of access claims, which the undersigned has found to be meritless.

The due process clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty or property, without due process of law." U.S. Const. Am. XIV. Even if Buzzard's claim is liberally construed to be asserting a deprivation of "property" in the form of the videos mailed to him in discovery in the WRJ matter, the Second Amended Complaint fails to state a plausible due process claim on that basis.

While it appears that the Supreme Court and the Fourth Circuit have not directly addressed such a claim in terms of alleged inmate mail tampering, the Sixth Circuit has held, "[w]e do not believe that, in a suit concerning a prison official's interference with a prisoner's mail, substantive due process provides the prisoner with any greater protection or right to damages than the specific guarantees of the First Amendment." *Parrish v. Johnson*, 800 F,2d 600, 606 n.9 (6th Cir. 1986). The *Parrish* Court further noted that it "would be hesitant" to hold that the handling of the inmate's mail in that case, considered alone, and in the prison context, "'was so offensive to human dignity' as to shock our conscience." *Id.* (citing *Rochin v. California*, 342 U.S. 165, 172 (1952)).[12]

Likewise, the undersigned proposes that the presiding District Judge **FIND** that Kathy Dillon's single incident of opening and reviewing his legal mail outside of his presence is not conduct that shocks the conscience and is insufficient to establish a plausible Fourteenth Amendment claim. For these reasons, the undersigned further

---

[12] The Supreme Court has established that "the legal standard of conduct necessary to establish a violation of substantive due process under the Fourteenth Amendment is 'shocks the conscience.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998); *see also, Young v. City of Mount Ranier*, 238 F.3d 567, 574 (4th Cir. 2001) ("Only governmental conduct that 'shocks the conscience' is actionable as a violation of the Fourteenth Amendment.")

proposes that the presiding District Judge **FIND** that Counts Three and Four of Buzzard's

Complaint are appropriate for dismissal under Rule 12(b)(6).

### C.  Buzzard's Fourth Amendment claim against Abie Hart.

In Count Seven of the Second Amended Complaint, Buzzard alleges that Abie Hart,

a trustee clerk at MOCC, violated his rights under the Fourth Amendment when she seized

money from his inmate account to pay a cable bill that the plaintiff disputes owing.  In

support of this claim, Buzzard alleges:

> 62.  On April 20, 2015, the Plaintiff received a memo from Defendant Abie Hart that clearly demonstrates to the Court that nothing has been resolved regarding MOCC staff deducting money from the Plaintiff's account for cable since October 2014, when the indigent Plaintiff has never owned a television, which is the only reason an inmate is billed for cable at MOCC.  Not only does the memo demonstrate that Defendant Hart refused to fully re-imburse the Plaintiff for money which was essentially stolen from him, it also demonstrates that whoever stated to Lisa Frye that because the trustee clerk re-imbursed the Plaintiff for cable, he was not eligible for indigency was clearly a lie and yet one more form of retaliation, implemented to obstruct the Plaintiff's pursuit of redress in the U.S. District Court.  EXHIBIT SEVENTEEN

> 63.  Defendant Hart's April 20, 2015 memo states that the Plaintiff was re-imbursed $300[13] by Ms. Angel on February 12, 2015.  The re-imbursment [sic; reimbursement] on Feb. 12, 2015 would not affect the Plaintiff's eligibility for indigency during the month of April 2015 because indigency is based solely on an inmate's account balance of the preceeding [sic; preceding] thirty (30) days.  Furthermore, a review of the Plaintiff's entire transaction detail clearly demonstrates to the Court that the Plaintiff was billed and money was illegally taken from his account on October 15, 2014, Receipt No. 3083187; November 14, 2014, Receipt No. 3134725; and December 15, 2014, Receipt No. 3183302.  However, Defendant Hart claims that she could not see these deductions on the Plaintiff's account. EXHIBIT EIGHTEEN

* * *

---

[13]  It is apparent from the plaintiff's Memorandum filed in Response to the defendants' Motion to Dismiss ("Response Memorandum") that the "$300" referenced in Hart's memo and in his Second Amended Complaint is a typographical error.  The Response Memorandum states that the plaintiff had a total of $12.00 taken from his account to pay for cable fees, and that he had $3.00 reimbursed, not $300.

99. Defendant Hart willfully and deliberately violated the Plaintiff's fourth amendment right against illegal search and seizure when she refused to reimburse the Plaintiff for money which was illegally seized from his account by Defendant Hart for cable which the Plaintiff never purchased, even after Defendant Ballard stated that the Plaintiff would be reimbursed.

(ECF No. 25 at 19-20, 28, ¶¶ 62, 53 and 99).

The defendants contend that this claim is moot in light of Buzzard's alleged reimbursement of the money taken from his account to pay for cable fees. (ECF No. 40 at 5). Their Memorandum of Law further states, "[g]iven that Plaintiff has admitted that this money has been refunded, it is clear that Plaintiff's claim is moot. Further, a dispute over cable billing that has already been resolved certainly does not rise to the level of an actionable constitutional violation. Thus, it is clear that this claim should be dismissed." (*Id.*)

However, Buzzard's Response Memorandum asserts that this claim is not moot because Angel only reimbursed $3.00 of the $12.00 that was deducted from his account. Thus, he contends that he is still owed $9.00 that was "illegally seized." His Response Memorandum further states:

Plaintiff has never admitted that any money was returned to him, a review of exhibit seventeen of the second amended complaint demonstrates that Defendant Hart admitted that Defendant Angel only refunded $3.00 to the Plaintiff on February 12, 2015. Plaintiff has never received the remaining $9.00 stolen from him. That April 20, 2015 memo was provided to the Plaintiff by Defendant Hart after Defendant Ballard answered grievance no. 15-MOCC-Q2-325 claiming that the issue was resolved and that the Plaintiff would be refunded. That response was issued by Defendant Ballard on April 20, 2015, five (5) days before Defendant Hart issued her memo. (Exhibits SIXTEEN and SEVENTEEN of second amended complaint).

(ECF No. 45 at 6).

Notwithstanding Buzzard's claim that he has not been fully reimbursed for the money "unreasonably" deducted from his account for unwarranted cable fees, such a claim does not rise to the level of a constitutional violation under the Fourth Amendment, as pled by Buzzard, because the Fourth Amendment does not extend to an inmate's financial account. *See, e.g., Jackson v. SCI-Camp Hill*, 2012 WL 3990888, *5 (M.D. Pa., Sept. 11, 2012) (an inmate has no Fourth Amendment rights in connection to his inmate account); *Ashton v. Knepp*, 2014 WL 3845117, *12 (M.D. Pa., Aug. 5, 2014) (claims regarding the transfer of funds to or deductions from an inmate's account are not cognizable under the Fourth Amendment); *Soto v. Meachum*, 1991 WL 218481, *7 (D. Conn., Aug. 28, 1991) ("plaintiff has no reasonable expectation of privacy in the contents of his inmate account.")

Consequently, the undersigned proposes that the presiding District Judge **FIND** that Buzzard's Second Amended Complaint fails to state a plausible claim for relief under the Fourth Amendment with respect to the conduct of defendant Abie Hart. Therefore, the undersigned further proposes that the presiding District Judge **FIND** that Count Seven of the Complaint is appropriate for dismissal under Rule 12(b)(6).

### D. The plaintiff's claims against Ralph Terry.

In Count Eight, the plaintiff alleges that Ralph Terry, Assistant Warden at MOCC, denied Buzzard access to the courts in violation of his First Amendment rights and his right to due process of law under the Fourteenth Amendment, when he denied Buzzard the ability to communicate with a witness in his WRJ civil matter. Specifically, Buzzard alleges:

> 65. In June, 2015, the Plaintiff submitted a request to Defendant Ballard, requesting authorization to correspond with witness Lamont Harris who is an inmate with the Federal Bureau of Prisons. Mr. Harris has

first hand, eye witness information in regards to the incident at Western Regional Jail which is the subject of the Plaintiff's civil action no. 3:14-CV-25533.

66.    On June 24, 2015, Defendant Ralph Terry denied the Plaintiff access to this witness.  EXHIBIT NINETEEN

67.    On or about June 25, 2015, the Plaintiff filed grievance no. 15-MOCC-Q2-639, regarding Defendant Terry's denying the Plaintiff access to witness Lamont Harris.  The Plaintiff fully exhausted his available administrative remedy in that matter.  EXHIBIT TWENTY

(ECF No. 25 at 21, ¶¶ 65-67 and Exs. 19-20).

The defendants do not address this specific allegation outside of their general assertion that Buzzard cannot establish a plausible claim of denial of access to the courts because he cannot demonstrate the actual injury element.  For the reasons previously stated herein, Buzzard cannot establish the essential element of actual injury in the form of the inability to pursue his claims.

Buzzard has not specifically alleged that Terry's refusal to mail his letter to Lamont Harris, a federal inmate who was housed at the WRJ at the time that Buzzard's incident occurred, resulted in the inability to establish his claims for relief.  In fact, as noted above, Buzzard's Eighth Amendment claims against the correctional officers involved is set for trial in April of 2017.  If Buzzard wishes to call Lamont Harris as a witness at his trial or to obtain an affidavit or declaration from him, his attorney will be able to make those arrangements.  Moreover, Exhibit Nineteen, which is the memorandum from Terry to Buzzard denying his request to correspond with Harris indicates that Buzzard's request was denied because Buzzard was in segregation at that time.  The memorandum further states, "once you are in general population and wish to correspond with this inmate, you will need to provide proof that you [are] both involved in the referenced Civil Action." (ECF No. 25, Ex. 19).

Thus, the undersigned proposes that the presiding District Judge **FIND** that Buzzard's Complaint fails to state a plausible First or Fourteenth Amendment claim against Ralph Terry.  The undersigned further proposes that the presiding District Judge **FIND** that Count Eight is appropriate for dismissal under Rule 12(b)(6).

### E.    The plaintiff's conspiracy claims.

In Counts Ten and Eleven, Buzzard alleges that the defendants conspired to violate his constitutional rights and failed to stop such constitutional violations.  He further asserts that such conduct is actionable under 42 U.S.C. §§ 1985 and 1986.  (ECF No. 25 at 29-30, ¶¶ 102, 103).  Again, the defendants' motion documents fail to address these specific claims.  However, the undersigned believes that, to the extent that Buzzard has attempted to allege claims under 42 U.S.C. §§ 1985 and 1986, as a matter of law, he is unable to state sufficient claims thereunder.

It appears that the operative section of 42 U.S.C. § 1985 relied upon by Buzzard is subsection (3), which provides:

> <u>If two or more persons in any State or Territory conspire</u> or go in disguise on the highway or on the premises of another, <u>for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws;</u> or for the purpose or preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; <u>in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.</u>

42 U.S.C. § 1985(3) (emphasis added). However, section 1985(3) was designed to redress injuries resulting from a conspiracy motived by race or class-based animus. *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971) (a violation of § 1985(3) must include class-based or racially discriminatory animus). Additionally, the Supreme Court has determined that the motive of the conspiracy must be the membership in or affiliation with a protected class of the intended victim, and not any personal malice the conspirators may have against the victim. *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 850 (1983).

The Fourth Circuit has acknowledged the same in identifying the following elements necessary to prove a section 1985 conspiracy:

> 1) a conspiracy of two or more persons, 2) who are motivated by a specific class-based, invidiously discriminatory animus to 3) deprive the plaintiff of equal enjoyment of rights secured by the law to all, 4) and which results in injury to the plaintiff as 5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (quoting *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)). "In the absence of allegations of class based or racial discriminatory animus, the complaint fails to state a claim under § 1985." *Campbell v. Amax Coal Co.*, 610 F.2d 701, 702 (10th Cir. 1979) (per curiam)

Here, Buzzard has not alleged any race or class-based discriminatory animus. Rather, he bases his conclusory conspiracy allegations solely on his pursuit of redress in another civil lawsuit in federal court. To the extent that Buzzard is contending that section 1985 claims may be actionable to protect a plaintiff who has exercised his First Amendment rights, it appears that the Supreme Court has specifically rejected that theory. *City of Greenwood v. Peacock*, 384 U.S. 808, 824 (1966). Accordingly, the

25

undersigned proposes that the presiding District Judge **FIND** that Count Ten of Buzzard's Second Amended Complaint fails to state a plausible claim under 42 U.S.C. § 1985 and is ripe for dismissal under Rule 12(b)(6).

Furthermore, because a claim under 42 U.S.C. § 1986 is wholly dependent upon a viable section 1985 claim, *see, e.g., Ogunsula v. Holder*, No. GJH-15-1297, 2015 WL 3892126, *3 (D. Md., June 22, 2015) (citing *Santistevan v. Loveridge*, 737 F.2d 116, 118 (10th Cir. 1984) ("there can be no valid claim under § 1986 of neglect to prevent a known conspiracy, in the absence of a conspiracy under § 1985"), the undersigned further proposes that the presiding District Judge **FIND** that Buzzard's claim under 42 U.S.C. § 1986 contained in Count Eleven of the Second Amended Complaint also fails as a matter of law and should be dismissed under Rule 12(b)(6).

To the extent that Buzzard's conspiracy claim could, instead, be brought under section 1983, the undersigned proposes that the presiding District Judge **FIND** that such a claim has not been sufficiently pled in the Second Amended Complaint.  To establish civil conspiracy under section 1983, a plaintiff must present evidence that the defendants acted jointly in concert and that some act was done in furtherance of the conspiracy, which resulted in the deprivation of the plaintiff's constitutional rights.  *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996); *see also Hafner v. Brown*, 983 F.2d 570, 577 (4th Cir. 1992).  This is "a weighty burden." *Hinkle,* 81 F.3d at 421.

Even taking all of his allegations as true, the undersigned proposes that the presiding District Judge **FIND** that Buzzard has not sufficiently established facts to support a finding of concerted conduct by the defendants that could support a plausible conspiracy claim.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that any claim of civil conspiracy against all of the defendants herein fails to

state a claim upon which relief can be granted.

### F.   The plaintiff's supervisory liability claims.

In Count Twelve, the plaintiff alleges that Warden David Ballard, Assistant Warden Teresa Gregory, Assistant Warden Ralph Terry, and Larry Propst, the Business Manager at MOCC, should be held liable as supervisors of the other defendants herein.   The plaintiff's allegations against these defendants appear to be limited to their roles as supervisory officials.

In *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994), the Court held that supervisors may be liable for the actions of their subordinates where the supervisor, *by his own conduct*, was deliberately indifferent to, or tacitly authorized or approved prior constitutional violations.   Such liability is not based on *respondeat superior*,[14] but rather upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care."   *Id.* at 798 (*quoting Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984)).

Recently, in *King v. Rubenstein*, the Fourth Circuit reiterated the following necessary elements established in *Shaw* for demonstrating a supervisor's liability under section 1983:   "[A] supervisor can be liable where (1) he knew that his subordinate 'was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;' (2) his response showed 'deliberate indifference to or tacit authorization of the alleged offensive practices;' and (3) that there was an 'affirmative causal link' between his inaction and the constitutional injury."   825 F.3d 206, 224 (4th Cir. 2016).   A plaintiff can establish

---

[14]   Buzzard's Second Amended Complaint specifically denies asserting any claim based upon *respondeat superior*.   (ECF No. 25 at 30, ¶¶ 104, 105).

the second element of deliberate indifference by showing a supervisor's "continued inaction in the face of documented widespread abuses." *Shaw*, 13 F.3d at 798. This is a heavy burden and cannot be satisfied by pointing to a single incident or isolated incidents. *Id.* The third element of causation includes both cause in fact and proximate cause. *Id.*

The defendants' Memorandum of Law in support of their Motion to Dismiss asserts that Buzzard has not described any specific tortious actions taken by David Ballard or Teresa Gregory. (ECF No. 40 at 5). The Memorandum further states:

> In fact, Plaintiff alleges that these defendants were generally helpful to him. Specifically, Plaintiff clearly alleges that after bringing a mail issue to his attention, Warden Ballard "apologized for any misunderstanding." *See:* Second Amended Complaint, Docket No. 25, ¶ 41. Plaintiff also clearly alleges that Associate Warden Gregory was helpful to him when alerted to an issue involving his mailings. *Id.* at ¶ 49. Thus, based on the lack of any tortious actions on the part of these defendants, it is clear that these individuals have been named solely in connection with their supervisory roles.

(*Id.*) Thus, the defendants assert that, despite his assertion to the contrary, Buzzard's claims against these defendants are, nonetheless, grounded in the theory of *respondeat superior.* (*Id.*) Likewise, although not addressed in the defendants' motion documents, Buzzard's assertions that defendants Terry and Propst should also be held liable as supervisors are conclusory in nature and not properly supported by any factual allegations. In fact, other than identifying Propst as the Business Manager at MOCC, there is not a single allegation concerning his role or his conduct in the Second Amended Complaint.[15]

The undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a plausible claim of supervisory liability against

---

[15] The undersigned has previously addressed defendant Terry's conduct surrounding the refusal to mail a letter to Buzzard's witness, which is the only conduct by Terry that is specifically addressed in the Second Amended Complaint.

defendants Ballard, Gregory, Terry or Propst.   First, the Second Amended Complaint contains a "formulaic recitation of the elements" of supervisory liability as addressed in *Shaw*, but it alleges no facts concerning the conduct of these defendants that meet the *Shaw* elements.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Second Amended Complaint fails to state any plausible claim for relief against David Ballard, Teresa Gregory, Ralph Terry and Larry Propst as supervisory officials.   Accordingly, Count Twelve of the Second Amended Complaint should be dismissed.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the defendants' Motion to Dismiss (ECF No. 39) with respect to every count of the Second Amended Complaint, except Count Nine against defendant Iotov.   Additionally, to the extent that First Amendment retaliation claims against defendants Jane Lucas, Laura Angel, Kathy Dillon, Lisa Boggs, Abie Hart and Vladimir Iotov can be read into Buzzard's Second Amended Complaint, the undersigned proposes that the presiding District Judge **FIND** that Buzzard has stated sufficient allegations to support those claims and such claims should be permitted to proceed.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge.   Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the

Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted only by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to the opposing parties and Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

February 6, 2017

Dwane L. Tinsley
United States Magistrate Judge