IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

DAVID DEAN BUZZARD, JR.,

                Plaintiff,

v.                                   CIVIL ACTION NO.   2:15-cv-06376

DAVID BALLARD, et al.,

                Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion to Dismiss (ECF No. 39).   By Standing Order entered May 7, 2014, and filed in this case on May 18, 2015, this action was referred to United States Magistrate Judge Dwane L. Tinsley for submission of proposed findings and a recommendation (PF&R).   Magistrate Judge Tinsley filed his PF&R (ECF No. 56) on February 6, 2017, recommending that this Court **GRANT IN PART** the Motion to Dismiss and further **FIND** that Plaintiff has sufficiently stated First Amendment retaliation claims against Defendants Jane Lucas, Laura Angel, Kathy Dillon, Lisa Boggs, Abie Hart and Vladimir Iotov.[1]

## I.   BACKGROUND

This case involves allegations by Plaintiff David Dean Buzzard, Jr., against various employees of Mount Olive Correctional Complex (MOCC).   In his Second Amended Complaint,

---

[1] The PF&R interprets Defendants' Motion to Dismiss to request dismissal of all claims except for Count Nine, which alleges an Eighth Amendment Excessive Force Claim against Defendant Iotov.   While this is a logical reading of the motion in that it does not address that claim, the motion also does not specifically address Plaintiff's conspiracy claims in Counts Ten and Eleven, but the PF&R analyzes those claims.   The Court notes that neither side objected to this interpretation of the scope of the Motion to Dismiss.

Plaintiff alleges that, beginning in August 2014, while he was incarcerated at MOCC, the Defendants subjected him to a variety of constitutional violations.   Many of his allegations relate to the Defendants' interference with a lawsuit Plaintiff was pursuing against correctional officers at the Western Regional Jail ("WRJ") in Barboursville, West Virginia, where he had been incarcerated in 2013.   None of the Defendants in this action were parties to that suit.   The facts of the case are more fully stated in the PF&R.

Defendants filed their Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 39) on June 15, 2016.   Plaintiff filed his Response (ECF No. 44) on July 22, 2016.[2]   Magistrate Judge Tinsley filed his PF&R on February 6, 2017, with objections due February 24, 2017. Defendants filed Objections (ECF No. 65) on February 20, 2017, and Plaintiff filed Objections (ECF No. 66) on February 21, 2017.

## II.   LEGAL STANDARD

### A.  Standard of Review of the PF&R

The Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.   *Thomas v. Arn*, 474 U.S. 140, 150 (1985).   Failure to file timely objections constitutes a waiver of *de novo* review and the Petitioner's right to appeal this Court's Order.   28 U.S.C. § 636(b)(1); *see also Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).   In addition, this Court need not conduct a *de novo* review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations."

---

[2]  Magistrate Judge Tinsley entered an order on January 30, 2017, deeming this Response timely filed.

*Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).   In reviewing the portion of the PF&R to which Plaintiff objects, this Court will consider the fact that Plaintiff is acting pro se, and his filings will be accorded liberal construction.   *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).

## B.  *Rule 12(b)(6) Standard*

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   Allegations "must be simple, concise, and direct" and "[n]o technical form is required."   Fed. R. Civ. P. 8(d)(1).   A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a civil complaint.   *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).   "[I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."   *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1356 (1990)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged."   *Id.*   A motion to dismiss will be granted if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts

in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

### III.     ANALYSIS

#### A.  Plaintiff's Possible Retaliation Claims

Defendants' sole objection relates to the PF&R's finding that Plaintiff has sufficiently pled a First Amendment Retaliation cause of action against certain Defendants.   The PF&R finds that, though it is not alleged as a specific count, Plaintiff's Second Amended Complaint sets out a First Amendment Retaliation claim against Defendants Jane Lucas, Laura Angel, Kathy Dillon, Lisa Boggs, Abie Hart, and Vladimir Iotov.   In order to state a § 1983 First Amendment retaliation claim, a plaintiff must allege (1) he engaged in a protected First Amendment Activity; (2) the defendants took some action that adversely affected the First Amendment rights; and (3) there was a causal connection between the protected activity and the defendants' conduct.   *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (citing *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000)).

Plaintiff has alleged that he filed a § 1983 lawsuit against correctional officers at the Western Regional Jail (the "WRJ Suit") where he had been incarcerated before he was housed at the Mount Olive Correctional Center.[3]   (ECF No. 25 ¶ 5.)   This clearly satisfies the first element, as such suits are protected under the First Amendment.   *See Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978) ("State prisoners have a constitutional right of meaningful access to the courts which a state may not abridge nor impair; nor may it impermissibly burden its exercise."); *see also*

---

[3] Plaintiff's prior suit, Civil Action 3:14-cv-25533, alleges claims against correctional officers employed by the West Virginia Regional Jail & Correctional Facility Authority and the Western Regional Jail in Barboursville, WV, while the instant action asserts claims against employees of the West Virginia Department of Corrections at the Mount Olive Correctional Complex.   (ECF No. 25 ¶ 1, 4.)

*Pronin v. Johnson*, 628 F. App'x 160, 162 (4th Cir. 2015) ("Prisoners have a right under the First and Fourteenth Amendments to litigate claims challenging their sentences or the conditions of their confinement to conclusion without active interference by prison officials.")

With regard to the latter elements, as noted in the PF&R, Plaintiff's Second Amended Complaint is peppered with references to retaliatory conduct, and one of the alleged counts of denial of access even directly alleges that Defendants Boggs' and Hart's refusals to attach postage to the Plaintiff's legal documents were done "in a retaliatory nature" for the filing of the WRJ Suit. (ECF No. 25 ¶ 98.)   The PF&R also infers retaliation claims against Defendant Lucas for her alleged denial of materials to Plaintiff to file his WRJ complaint, against Defendant Angel for her refusal to mail Plaintiff's WRJ documents as "legal mail," against Defendant Dillon for her seizure of video evidence mailed to Plaintiff for the WRJ matter, and against Defendant Iotov for using pepper spray on Plaintiff after he sought the assistance of a shift commander in locating legal documents.   (ECF No. 56 at 14-15.)   With the exception of the claim against Defendant Iotov, the conduct that forms the basis for each of these claims is identical to conduct Plaintiff alleged as the basis for his denial of access claims.

Defendants' objections do not challenge that Plaintiff's lawsuit constituted a protected activity, but instead assert that Plaintiff has not properly alleged that he suffered any adverse effect or that his protected lawsuit motivated any of the Defendants' actions.   The Court will address these two contentions in turn.

*1. Adverse Effect*

Defendants' objections argue that Plaintiff has not pled a retaliation claim because he has not suffered any actual injury or adverse consequence to the exercise of his constitutional right.

5

Defendants correctly note that in order to prove a retaliation claim, Plaintiff must show he "suffered some adversity in response to [his] exercise of protected rights." *ACLU of Md., Inc. v. Wicomico Cty., Md.*, 999 F.2d 780, 785 (4th Cir. 1993); *see also Constantine*, 411 F.3d at 500 ("[A] plaintiff seeking to recover for retaliation must show that the defendant's conduct resulted in something more than a de minimis inconvenience to her exercise of First Amendment rights." (quotations omitted)).   However, "a plaintiff need not actually be deprived of her First Amendment rights in order to establish First Amendment retaliation." *Constantine*, 411 F.3d at 500.   Because retaliation is concerned with conduct that tends to "chill" the exercise of constitutional rights, for the purposes of a § 1983 retaliation suit, "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Id.* (citing *Washington v. County of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004)).   Generally, the question of whether conduct would deter a "person of ordinary firmness" from exercising their constitutional right is one of fact for a jury.   *See Santiago v. Blair*, 707 F.3d 984, 992 (8th Cir. 2013).

Defendants' Objections argue that, because an unchallenged portion of the PF&R concluded that Plaintiff's denial of access to courts claims failed because he did not suffer any actual injury as required for a violation of that right, he has also failed to allege an adverse effect for the purpose of retaliation claims.[4]   The PF&R does find that Plaintiff failed to show an injury for the purpose of the denial of access claim, explaining:

> [Plaintiff] wholly fail[s] to address how his ability to prosecute his claims in the WRJ matter has been "actually injured." Buzzard's allegations do not establish that

---

[4] In its analysis of a potential denial of access claim against Defendant Ralph Terry, the PF&R discusses an exhibit outside the pleadings.   (ECF No. 56 at 23.)   While exhibits outside the pleadings should generally not be considered on a 12(b)(6) Motion to Dismiss, the Court notes that the PF&R finds that the claim against Defendant Terry fails due to Plaintiff's failure to demonstrate prejudice in the WRJ Suit, and primarily uses the exhibit to provide context.

6

the conduct of any of the defendants actually caused him to miss a court-imposed deadline or proximately caused the dismissal of any of his claims.

(ECF No. 56 at 10.)[5]   However, Defendants' reliance on the failure of Plaintiff's denial of access claims is misplaced; as discussed above, Plaintiff need not establish that acts of retaliation deprived him of the First Amendment rights he was exercising.   Rather, he need only show that the retaliatory conduct was likely to deter "a person of ordinary firmness" from the exercise of such rights.   As the Fourth Circuit has pointed out, to hold that "a plaintiff alleging retaliation must show that the action taken in response to her exercise of constitutional rights independently deprives her of a constitutional right . . . would make a cause of action for retaliation wholly redundant of the protections provided by the Constitution itself."   *ACLU of Md., Inc.*, 999 F.2d at 786 n.6.   Accordingly, Plaintiff has not failed to show an adverse effect for the purposes of retaliation simply because he has failed to allege an injury for the purposes of his denial of access claims.

   *2.   Causation*

   Defendants' Objections also argue that the Complaint fails to allege sufficient facts to show that there was a causal connection between Plaintiff's lawsuit and the Defendants' allegedly retaliatory conduct.   In stating a claim for retaliation under § 1983, Plaintiff cannot rely on conclusory allegations of retaliatory motive.   *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996).   The Fourth Circuit has also noted that in the context of prisoners' suits, "claims of retaliation must therefore be regarded with skepticism" because "[e]very act of discipline by prison officials is by definition 'retaliatory' in

---

[5] Though Plaintiff's Objections briefly discuss the PF&R's findings on his denial of access claims, he does not challenge the finding that there was no injury, and even acknowledges that "[a]t this point, Plaintiff has not suffered any actual injury in the WRJ civil matter."   (ECF No. 66 at 4.)

the sense that it responds directly to prisoner misconduct." *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994).

With the exception of the claim against Defendant Iotov, Plaintiff has failed to plead sufficient facts to support causation for each of these claims.  As Defendants point out, none of these Defendants were implicated in any way by Plaintiff's WRJ Suit, as that lawsuit dealt with a different facility entirely.  In a similar context, this Court has found the lack of connection between a defendant and the plaintiff's lawsuit that was the asserted reason for the alleged retaliation to be detrimental to a showing of causation.  *See Djenasevic v. United States Dep't of Justice*, No. 5:14-CV-14596, 2016 WL 6647938, at *5 (S.D. W. Va. Nov. 9, 2016) ("The Plaintiff has provided no facts indicating that Defendant Hamrick was in any way implicated by the Plaintiff's original complaint (which did not name Hamrick) such that Defendant Hamrick would have incentive to retaliate against the Plaintiff."); *see also Talbert v. Hinkle*, 961 F. Supp. 904, 913 (E.D. Va. 1997) ("[I]t is unfathomable why all of these defendants would join in a 'conspiracy of retaliation' over a lawsuit to which none of them were a party.").

With no alleged facts evidencing any motivation by the Defendants to retaliate against Plaintiff for the WRJ Suit, the Court would be required to infer causation against Defendants Boggs and Hart simply on Plaintiff's bald assertion that "these defendants acted in a retaliatory manner for the Plaintiff's filing of [the WRJ Suit]" and against Defendants Lucas, Angel, and Dillon simply because their conduct occurred after the filing of Plaintiff's WRJ Suit.  The Court finds that Plaintiff has inadequately pled facts to support an inference of causation as to these

Defendants, and so it declines to construe the Second Amended Complaint as stating retaliation claims against them.[6]

While the Second Amended Complaint similarly lacks allegations suggesting Defendant Iotov had any motivation to retaliate against the WRJ Suit, it alleges Defendant Iotov's retaliatory incident with greater specificity. The Second Amended Complaint alleges that "Plaintiff was assaulted with the chemical agent, for seeking the assistance of a shift commander in order to locate his legal documents." (ECF No. 25 ¶ 8.) While this allegation does not mention Iotov by name, later allegations clarify that this paragraph referred to him, noting that "after not receiving his legal documents back from the law library," Plaintiff called for correctional officers, and Defendant Iotov was among the officers who came to his cell. (*Id.* ¶ 70-72.) Plaintiff alleges that he requested to speak to a shift commander in order to receive his legal documents, and when Defendant Iotov refused, the two began to argue about the issue, until Iotov instructed one of the other officers to drop Plaintiff's food slot so he could spray Plaintiff with oleoresin capsicum.[7] (*Id.* ¶ 73-75.) Defendant Iotov then "assaulted" Plaintiff with the chemical and then ordered a cell extraction. (*Id.* ¶ 75-76.)

While these allegations suggest other possible, and indeed, more likely reasons for Defendant Iotov's use of pepper spray on Plaintiff, the Court finds that Plaintiff has alleged sufficient facts to support the element of causation as to this specific Defendant. Plaintiff alleges

---

[6] The Court notes that to construe these instances as retaliation claims, which are based on the same conduct as Plaintiff's denial of access claims against these Defendants, would effectively allow Plaintiff to circumvent the requirement that he demonstrate that he was prejudiced by any of these actions in his lawsuit as required to state a claim for denial of access. Without requiring facts supporting causation, this would allow plaintiffs to simply allege that any conduct supporting a claim of denial of access was also "retaliatory" and thereby present a triable issue even where the denial of access claims themselves fail due to lack of prejudice in the relevant lawsuit. This is not to say that certain conduct could not possibly give rise to both claims, but to state a claim for retaliation there must be facts alleged that support that the protected activity—the lawsuit—actually motivated the allegedly retaliatory conduct.

[7] Oleoresin capsicum is commonly known as "pepper spray."

that Defendant Iotov's use of pepper spray came directly as a result of an argument over Plaintiff's access to legal documents he needed for his lawsuit.   While the allegations do not suggest Defendant Iotov had any specific motivation to retaliate against Plaintiff's WRJ Suit, construed liberally, these allegations allow for an inference that Iotov was motivated to use pepper spray on Plaintiff because Plaintiff was seeking documents related to this case.   Accordingly, with respect to Defendant Iotov, the Court agrees with the PF&R that Plaintiff has stated a claim for First Amendment Retaliation.

## B.  *Plaintiff's Possible § 1983 Conspiracy Claim*

Plaintiff's second objection relates to the PF&R's finding that the Second Amended Complaint does not include allegations sufficient to construe Plaintiff's alleged § 1985 conspiracy as a § 1983 conspiracy.[8]   Plaintiff's objection on this issue is brief and conclusory, simply stating that it is "no coincidence that the Plaintiff has suffered repeated acts of obstruction, oppression and impediments at the hands" of the Defendants.   (ECF No. 66 at 5-6.)   On that basis, noting that his pleadings should be "liberally construed," Plaintiff appears to ask the Court to infer a § 1983 conspiracy.

As noted above, the Court has no obligation to conduct *de novo* review of these "general and conclusory objections" that fail to address specific issues in a PF&R.   As the PF&R notes, in order to state a claim for a conspiracy under 42 U.S.C. § 1983, a plaintiff "must present evidence that the [Defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [Plaintiff's] deprivation of a constitutional right."   *Hinkle v. City*

---

[8]  Plaintiff's first objection relates to his retaliation claims. Plaintiff's objection on these claims alleges some additional inconveniences in his litigation efforts and "objects to the analysis of the Magistrate [Judge]" that the retaliation claims "could only be liberally construed."   However, Plaintiff's Objections offer no substantive challenge on this issue.

*of Clarksburg, W.Va.*, 81 F.3d 416, 421 (4th Cir. 1996).   "[Plaintiff's] evidence must, at least, reasonably lead to the inference that [Defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan."   *Id.* at 422.   To survive a motion to dismiss, a plaintiff alleging a conspiracy "must plead facts amounting to more than 'parallel conduct and a bare assertion of conspiracy.'"   *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)).

Here, Plaintiff has not alleged any agreement or understanding between the Defendants, other than conclusory allegations such as "[t]he Defendants in this matter have conspired to violate and abridge all of these constitutional rights of the Plaintiff" and "these Defendants conspired together in order to violate the Plaintiff's constitutional rights."   (ECF No. 25 ¶ 1, 102.)   These conclusory allegations, without factual support, are insufficient to state a claim for a § 1983 conspiracy.   Accordingly, this Court agrees with the PF&R and declines to construe the Second Amended Complaint to state a claim for a conspiracy under 42 U.S.C. § 1983.

## IV.   CONCLUSION

Accordingly, the Court **ADOPTS** the PF&R (ECF No. 56) to the extent consistent with this opinion, **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss (ECF No. 39), **DISMISSES** each count of the Second Amended Complaint except for Count Nine against Defendant Iotov, and **FINDS** that Plaintiff has also stated a First Amendment Retaliation Claim against Defendant Iotov.[9]   Accordingly, the Court **DISMISSES** Laura Angel, David Ballard, Lisa

---

[9] Plaintiff's objections ask, in the alternative, for an opportunity to file a Third Amended Complaint.   This request seems to be mooted by Plaintiff's filing of a Motion for Leave to File a Third Amended Complaint (ECF No. 67). That Motion is no longer referred to Magistrate Judge Tinsley, and the Proposed Third Amended Complaint (ECF No. 67-1) offers no factual allegations that would impact the Court's analysis of Plaintiff's claims.   Accordingly, that

Boggs, Kathy Dillon, Teresa Gregory, Abbie Hart, Larry Propst, Jim Rubenstein, Jane Lucas, and Ralph Terry as named Defendants in this matter.   The Eighth Amendment and First Amendment Retaliation Claims against Defendant Iotov remain pending.   This case is **RE-REFERRED** to Magistrate Judge Tinsley for further pretrial management and submission of further proposed findings and recommendations for disposition.

   **IT IS SO ORDERED**.

   The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

        ENTER:   March 17, 2017

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

---

Motion (ECF No. 67) is **DENIED**.