IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

DAVID DEAN BUZZARD, JR.

                Plaintiff,

v.                                                CIVIL ACTION NO. 2:15-cv-06376

DAVID BALLARD, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a motion for summary judgment filed by the sole remaining Defendant in this case, Vladimir Iotov. (ECF No. 99.) For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for Summary Judgment.

*I.    BACKGROUND*

This case involves allegations by Plaintiff David Dean Buzzard, Jr., against various employees of the Mount Olive Correctional Complex ("MOCC"). In his Second Amended Complaint, Plaintiff alleges that beginning in August 2014, while he was incarcerated at MOCC, Defendants subjected him to various constitutional violations. Many of his allegations relate to Defendants' interference with a lawsuit Plaintiff was pursuing against correctional officers at the Western Regional Jail in Barboursville, West Virginia, where he had been incarcerated in 2013. None of the Defendants in this action were parties to that suit. The facts of the case have been addressed previously by this Court at length and therefore will not be repeated. (*See* ECF No. 56.)

1

This Court dismissed all Defendants in this action, except Vladimir Iotov ("Defendant"), in its March 17, 2017 Memorandum Opinion and Order. (ECF No. 73.) This Court also dismissed each count of Plaintiff's Second Amended Complaint except for his Eighth Amendment excessive force and First Amendment retaliation claims against Defendant. (*Id*.) Defendant filed his Motion for Summary Judgment on September 8, 2017. (ECF No. 99.) Plaintiff timely filed his response on September 21, 2017, (ECF No. 101), to which Defendant replied on October 5, 2017, (ECF No. 102), as allowed by this Court's order, (ECF No. 76). As such, Defendant's motion has been briefed and is ripe for adjudication.

## II. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. That rule provides that a court should grant summary judgment if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). When construing such factual issues, this Court views the evidence "in the light most favorable to" the party opposing summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see Liberty Lobby*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." (citation omitted)).

## III.     DISCUSSION

A. *Eighth Amendment Excessive Force*

Defendant first argues that he is entitled to summary judgment as to Plaintiff's Eighth Amendment excessive force claim. (*See* ECF No. 100 at 4–6.) Plaintiff's claim arises from an incident that occurred on July 14, 2015, when he was pepper sprayed by Defendant. (*See* ECF No. 25 at 22–23, 29.) On that day, Plaintiff was housed in the segregation unit at MOCC, without a cellmate. (ECF No. 101-1 at 20–21.) He pressed his call button, and Defendant came to his cell, along with another correctional officer. (ECF No. 100-1 at 4.) Plaintiff asked Defendant for some legal documents from the library. (*Id.* at 5.) Defendant returned with some papers, but they were not the documents Plaintiff was looking for. (*Id.*) Plaintiff then asked Defendant to call the shift commander, but Defendant refused. (*Id.* at 6.) Plaintiff and Defendant then began "arguing back and forth." (*Id.* at 6–7.) According to Defendant, Plaintiff was also kicking the door to his cell, (ECF No. 101-3 at 4, 6), but Plaintiff denies that, (ECF No. 100-1 at 7). Defendant also avers that he commanded Plaintiff to stop kicking the door. (ECF No. 101-3 at 7, 11.)

At some point during the argument, Defendant ordered the other correctional officer to lower the food tray slot in Plaintiff's cell door so Defendant could "spray" Plaintiff. (ECF No. 100-1 at 6.) Defendant opened the slot himself and "deployed two one[-]second bursts" of pepper spray "to [Plaintiff's] eyes, nose and forehead area." (ECF No. 100-3 at 1.) Afterward, Plaintiff was handcuffed and escorted from his cell for decontamination. (ECF No. 100-1 at 8.) Although he "was coughing" and his "eyes were burning," Plaintiff refused to be decontaminated and also refused medical treatment. (*Id.* at 9–11.) Plaintiff argues that the use of pepper spray

3

violated his Eighth Amendment right to be free from the use of excessive force. (*See* ECF No. 25 at 29.)

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments." U.S. Const., amend. VIII; *see Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008). It "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . , against which we must evaluate penal measures." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation omitted). "In the prison context, it 'protects inmates from inhumane treatment and conditions while imprisoned.'" *Iko*, 535 F.3d at 238 (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). "The Eighth Amendment [thus] places restraints on prison officials, who may not, for example, use excessive physical force against prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted).

In Eighth Amendment excessive force cases, this Court's principal inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Thompson v. Virginia*, 878 F.3d 89, 98 (4th Cir. 2017) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992)); *see Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam). The inmate's claim is comprised of a subjective component as well as an objective component. *Iko*, 535 F.3d at 238. Specifically, in evaluating the claim, this Court asks "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Id.* (quoting *Williams*, 77 F.3d at 761).

With respect to the subjective component, this Court determines whether a correctional officer "act[s] maliciously or 'wantonly'" by considering four non-exclusive factors: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was

4

used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response. *Thompson*, 878 F.3d at 98; *see Iko*, 535 F.3d at 239 ("The state of mind required in excessive force claims is 'wantonness in the infliction of pain.'" (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986))). In this case, questions of fact exist as to whether Defendant's use of pepper spray on Plaintiff was reasonable under the circumstances.

Under Plaintiff's version of the facts, he was "being verbally abusive" toward Defendant at the time Defendant used the pepper spray, but nothing more. He avers that he was not kicking the door to his cell. The parties agree that the incident occurred while Plaintiff was confined alone in his cell in MOCC's segregation unit. Thus, viewing the facts in Plaintiff's favor, the need for the application of force in this case is minimal, at best. Further, because Plaintiff was alone and secured in his cell, he presented no threat to the safety of Defendant, other correctional officers, or other inmates at the time he was sprayed. These facts support an inference that Defendant used the pepper spray to harm Plaintiff.

But under Defendant's version of the facts, a minor use of force—such as "two one[-]second bursts" of pepper spray—may have been a reasonable step to pacify the situation. According to Defendant, Plaintiff was kicking the door to his cell and refused to comply with Defendant's commands. It is clear that a chemical agent such as mace "can be constitutionally used in small quantities . . . to control a 'recalcitrant inmate.'" *Williams*, 77 F.3d at 763. Because the facts about Plaintiff's conduct are in dispute, this Court cannot hold as a matter of law that the use of pepper spray was justified in this case.

Turning now to the objective component of Plaintiff's excessive force claim, "the Eighth Amendment does not prohibit a *de minimis* use of force that is not itself 'repugnant to the

5

conscience of mankind.'" *Thompson*, 878 F.3d at 100–01. However, when the prison official's "use of force is malicious or repugnant," even "a prisoner who suffers a minor . . . injury may be able to prevail." *Id.* at 98, 101. This is because "the nature of the force, rather than the extent of the injury, is the relevant inquiry." *Hill v. Crum*, 727 F.3d 312, 321 (4th Cir. 2013); *see Tedder v. Johnson*, 527 F. App'x 269, 272 (4th Cir. 2013) ("The objective component focuses not on the severity of any injuries inflicted, but rather on 'the nature of the force,' which must be 'nontrivial.'" (quoting *Wilkins*, 559 U.S. at 39)).

Defendant argues that any injury Plaintiff suffered from the pepper spray was *de minimis* because Plaintiff did not need decontamination and refused medical treatment. Defendant may be correct, but if Defendant deployed the pepper spray with the purpose of causing harm to Plaintiff, then the extent of Plaintiff's injuries is not relevant. *See Wilkins*, 559 U.S. at 39. And because there is a dispute of fact as to whether Defendant acted to cause harm, this Court cannot hold as a matter of law that Plaintiff's claimed injury does not amount to a constitutional violation.

The Court thus finds that there are genuine issues of material fact as to both the subjective and objective inquiries that are part of Plaintiff's Eighth Amendment excessive force claim. These issues of fact are properly resolved by a jury.

B. *Qualified Immunity*

Defendant also argues that he is entitled to summary judgment because he is protected by the doctrine of qualified immunity. (*See* ECF No. 100 at 6–7.) "To overcome the qualified immunity defense at the summary judgment stage, the plaintiff must have shown facts that make out a violation of a constitutional right, and the right at issue must have been 'clearly established' at the time of the defendant's alleged misconduct." *Thompson*, 878 F.3d at 97 (citing *Pearson v.*

6

*Callahan*, 555 U.S. 223, 232, 236 (2009)). As explained above, an issue of material fact exists as to whether Defendant violated Plaintiff's constitutional right to be free from excessive force.

However, any violation is irrelevant unless the right was "clearly established"—that is, "the contours of the right [are] sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Hill*, 727 F.3d at 321 (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). A constitutional right is considered "clearly established" if, at the time of the alleged violation, precedent from the Supreme Court, the Fourth Circuit, or the highest court of the state in which the action arose is sufficiently factually similar to the alleged violation. *Thompson*, 878 F.3d at 98. This Court "may also consider whether the right was clearly established based on general constitutional principles or a consensus of persuasive authority." *Id.* (internal quotation marks omitted).

"It is generally recognized that it is a violation of the Eighth Amendment for prison officials to use mace, tear gas, or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain." *Williams*, 77 F.3d at 763 (internal quotation marks omitted); *see Iko*, 535 F.3d at 240 ("*Williams*'s use of 'or other chemical agents' plainly reaches the use of pepper spray . . . ." (internal citation omitted)). Therefore, if Defendant maliciously sprayed Plaintiff with pepper spray, Defendant would not be entitled to qualified immunity. As previously discussed, a question of fact exists as to whether Defendant used the pepper spray to inflict harm on Plaintiff. Defendant is thus not entitled to qualified immunity at this stage.

C. *Retaliation*

Finally, Defendant asserts that he is entitled to summary judgment as to Plaintiff's First Amendment retaliation claim. (*See* ECF No. 100 at 7–8.) Plaintiff's opposition to Defendant's motion for summary judgment offers no response to Defendant's arguments with respect to that

claim.  (*See* ECF No. 101.)    Therefore, Plaintiff appears to have abandoned his claim. *Blankenship v. Necco, LLC*, No. 2:16-cv-12082, 2018 WL 3581092, at *9 (S.D. W. Va. July 25, 2018) ("The failure to respond to arguments raised in a motion for summary judgment can indicate that the non-moving party concedes the point or abandons the claim.").  Summary judgment in favor of Defendant on this claim is thus appropriate.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED IN PART** as to Plaintiff's First Amendment retaliation claim and **DENIED IN PART** as to Plaintiff's Eighth Amendment excessive force claim.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: September 10, 2018

THOMAS E. JOHNSTON, CHIEF JUDGE